UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:                                                                          Chapter 7
                                                                                Case No: 14-11979-SHL

PRETTY GIRL, INC.,

                        Debtor.
------------------------------------------------------------------x
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,
                                                                                Adv. Pro. No. 16-01150-SHL
                                Plaintiff,

       - against -

72 FASHION CORP.,

                                Defendant
------------------------------------------------------------------x
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,
                                                                                Adv. Pro. No. 16-01151-SHL
                                Plaintiff,

       - against -

165-24 JAMAICA AVE CORP.,

                                Defendant.
------------------------------------------------------------------x
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,
                                                                                Adv. Pro. No. 16-01152-SHL
                                Plaintiff,

       - against -

241 UTICA AVE CORP.,
                                Defendant.
------------------------------------------------------------------x

```
---------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                                              Adv. Pro. No. 16-01153-SHL

                        Plaintiff,

       - against -

947 S. CORP.,

                        Defendant.
```
---------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,                                            Adv. Pro. No. 16-01154-SHL

                        Plaintiff,

        -against-

1168 LIBERTY CORP.,

                        Defendant.
```
---------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                             Adv. Pro. No. 16-01155-SHL

                        Plaintiff,

       - against -

1556 FLATBUSH AVE CORP.,

                        Defendant.
```
---------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                             Adv. Pro. No.  16-01156-SHL

                        Plaintiff,

       - against -

2891 3RD AVE CORP.,

                        Defendant.
```
---------------------------------------------------------------------x
```

```
-------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                            Adv. Pro. No. 16-01157-SHL

                            Plaintiff,

       - against -

PG OF 730 FLATBUSH AVE CORP.,

                            Defendant.
```
-------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                            Adv. Pro. No. 16-01158-SHL

                            Plaintiff,

       - against -

PG OF JERSEY CITY CORP.,

                            Defendant.
```
-------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                            Adv. Pro. No. 16-01159-SHL

                            Plaintiff,

       - against -

PRETTY GIRL OF FORDHAM ROAD CORP.,

                            Defendant.
```
-------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                            Adv. Pro. No. 16-01160-SHL

                            Plaintiff,

       - against -

PRETTY GIRL OF MOUNT VERNON, INC.,

                            Defendant.
```
-------------------------------------------------------------------x
```

```
-------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                             Adv. Pro. No. 16-01161-SHL

                  Plaintiff,

     - against -

PRETTY GIRL OF NEWARK LTD.,

                  Defendant.
```
-------------------------------------------------------------------x
```
SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE
OF PRETTY GIRL, INC.,

                                             Adv. Pro. No. 16-01162-SHL

                  Plaintiff,

     - against -

PRETTY GIRL OF WOODBRIDGE INC.,

                  Defendant.
```
-------------------------------------------------------------------x
```

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## PURSUANT TO RULE 7056 OF THE LOCAL BANKRUPTCY
## RULES FOR THE SOUTHERN DISTRICT OF NEW YORK

Plaintiff Salvatore LaMonica (the "Plaintiff" or "Trustee"), as Trustee of the estate of Pretty Girl, Inc. (the "Debtor"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, hereby submits his statement, pursuant to Local Bankruptcy Rule 7056, in connection with his omnibus motion for summary judgment against the Defendants in the above-captioned adversary proceedings granting a money judgment, together with interest thereon. Since there are no genuine issues of material fact to be tried as to the following facts, summary judgment is appropriate.

## PROCEDURAL HISTORY

1.      On July 2, 2014 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.  [Main Case Dkt. No. 1] A fair and accurate copy of the Debtor's Petition, the Declaration of Albert Nigri under Local Bankruptcy Rule 1007-2 and the exhibits are annexed as Exhibit "A".

2.      On December 11, 2014, the Debtor filed a motion to convert the Chapter 11 case to a Chapter 7.  [Main Case Dkt. No. 127]

3.      On December 23, 2014 (the "Conversion Date"), an Order was entered converting the Debtor's Chapter 11 case to a Chapter 7 case.  [Main Case Dkt. No. 142]

4.      By Notice of Appointment dated December 24, 2014, Salvatore LaMonica, Esq., was appointed the interim Chapter 7 Trustee of this estate, has since duly qualified and the permanent Chapter 7 Trustee of this estate.   [Main Case Dkt. No. 143]

5.      The Debtor filed its final operating report, dated December 26, 2014, on January 13, 2015, a fair and accurate copy of which is annexed as Exhibit "B". [Main Case Dkt. No. 149]

## 72 FASHION CORP.

6.      On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against 72 Fashion Corp. ("72 Fashion") to collect: (a) $142,976.41 in accounts receivable owed by 72 Fashion to the Debtor; and (b) $36,700.00 in advances made by the Debtor to or for the benefit of 72 Fashion, under adv pro no. 16-01150 (SHL).  A fair and accurate copy of the summons and complaint filed against 72 Fashion is annexed as Exhibit "C".

7.      On March 20, 2017, 72 Fashion interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "D".

8.      In its Answer, 72 Fashion admits in response to paragraphs "63" and "64":

> 63.      As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [72 Fashion] owed the Debtor the sum of $142,976.41 on account of goods sold by the Debtor and delivered to [72 Fashion].
>
> 64.      According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [72 Fashion] also owed the Debtor $36,700.00 on account of advances made to or for the benefit of [72 Fashion].

See Exhibits "C" and "D".

9.      Following joinder of the issue, counsel for Plaintiff and 72 Fashion exchanged initial disclosures, and Plaintiff served 72 Fashion with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "E".

10.     On or about April 25, 2018, 72 Fashion served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "F".

11.     In its response, 72 Fashion admits, among other things, that:

a.      As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 72 Fashion owed the Debtor $142,976.41 on account of goods sold and delivered to 72 Fashion.

b.      As of June 30, 2014, 72 Fashion owed the Debtor "due from" obligations of $36,700.00.

c.      72 Fashion did not make any direct payments to the Debtor subsequent to December 26, 2014 to reduce the accounts receivable due the Debtor.

d.      72 Fashion did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

e.      At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 72 Fashion.

     f.    72 Fashion admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

     g.    72 Fashion admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

<u>See</u> Exhibit "F".

12.    The foregoing records evidence that 72 Fashion has acknowledged owing the aggregate sum of $179,676.41 to the Debtor and that said sum has not been repaid to the estate.

### 165-24 JAMAICA AVE CORP.

13.    On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against 165-24 Jamaica Ave Corp. ("165-24 Jamaica") to collect: (a) $265,036.24 in accounts receivable owed by 165-24 Jamaica to the Debtor; and (b) $82,800.00 in advances made by the Debtor to or for the benefit of 165-24 Jamaica, under adv pro no. 16-01151 (SHL). A fair and accurate copy of the summons and complaint filed against 165-24 Jamaica is annexed as Exhibit "G".

14.    On March 20, 2017, 165-24 Jamaica interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "H".

15.    In its Answer, 165-24 Jamaica admits in response to paragraphs "63" and "64":

    63.    As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [165-24 Jamaica] owed the Debtor the sum of $265,036.24 on account of goods sold by the Debtor and delivered to [165-24 Jamaica].
    64.    According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [165-24 Jamaica] also owed the Debtor $82,800.00 on account of advances made to or for the benefit of [165-24 Jamaica].

<u>See</u> Exhibits "G" and "H".

16. Following joinder of the issue, counsel for Plaintiff and 165-24 Jamaica exchanged initial disclosures, and Plaintiff served 165-24 Jamaica with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "I".

17. On or about April 25, 2018, 165-24 Jamaica served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "J".

18. In its response, 165-24 Jamaica admits, among other things, that:

    a.    As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 165-24 Jamaica owed the Debtor $265,036.24 on account of goods sold and delivered to 165-24 Jamaica.

    b.    As of June 30, 2014, 165-24 Jamaica owed the Debtor "due from" obligations of $82,800.00.

    c.    165-24 Jamaica did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

    d.    At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 165-24 Jamaica.

    e.    165-24 Jamaica admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

    f.    165-24 Jamaica admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "J".

19. According to the accounts payable aging ledger produced by 165-24 Jamaica, as of December 26, 2014, after making a post-petition general journal debit of $289,534.12 on July 31,

2014, Defendant owed the Debtor $81,854.41.  A fair and accurate copy of the ledger produced by 165-24 Jamaica is annexed as Exhibit "K".

20.     Disregarding the post-petition $289,534.12 general journal entry made by 165-24 Jamaica on July 31, 2014, according to its own ledger, 165-24 Jamaica owed the Debtor accounts payable of $371,388.53 as of December 26, 2014.  See Exhibit "K".

21.     165-24 Jamaica did not make any direct payments to the Debtor subsequent to December 23, 2014 to reduce the accounts receivable owed to the Debtor.  See Exhibit "K".

22.     The foregoing records evidence that 165-24 Jamaica has acknowledged owing the aggregate sum of $347,836.24 to the Debtor and that said sum has not been repaid to the estate.

## 241 UTICA AVE CORP.

23.     On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against 241 Utica Ave Corp. ("241 Utica") to collect: (a) $54,447.94 in accounts receivable owed by 241 Utica to the Debtor; and (b) $58,607.44 in advances made by the Debtor to or for the benefit of 241 Utica, under adv pro no. 16-01152 (SHL).  A fair and accurate copy of the summons and complaint filed against 241 Utica is annexed as Exhibit "L".

24.     On March 20, 2017, 241 Utica interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "M".

25.     In its Answer, 241 Utica admits in response to paragraphs "63" and "64":

> 63.     As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [241 Utica] owed the Debtor the sum of $54,447.94 on account of goods sold by the Debtor and delivered to [241 Utica].
> 64.     According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [241 Utica] also owed the Debtor $58,607.44 on account of advances made to or for the benefit of [241 Utica].

See Exhibits "L" and "M".

26.     Following joinder of the issue, counsel for Plaintiff and 241 Utica exchanged initial disclosures, and Plaintiff served 241 Utica with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "N".

27.     On or about April 25, 2018, 241 Utica served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "O".

28.     In its response, 241 Utica admits, among other things, that:

a.      As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 241 Utica owed the Debtor $54,447.94 on account of goods sold and delivered to 241 Utica.

b.      As of June 30, 2014, 241 Utica owed the Debtor "due from" obligations of $58,607.44.

c.      241 Utica did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

d.      At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 241 Utica.

e.      241 Utica admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

f.      241 Utica admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "O".

29.     According to the accounts payable aging ledger produced by 241 Utica, as of December 23, 2014, Defendant owed the Debtor $54,431.94.  A fair and accurate copy of the ledger produced by 241 Utica is annexed as Exhibit "P".

30.     The foregoing records evidence that 241 Utica has acknowledged owing the aggregate sum of $113,055.38 to the Debtor and that said sum has not been repaid to the estate.

## 947 S. CORP.

31.     On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against 947 S. Corp. ("947 S.") to collect: (a) $82,869.79 in accounts receivable owed by 947 S. to the Debtor; and (b) $14,300.00 in advances made by the Debtor to or for the benefit of 947 S. under adv pro no. 16-01153 (SHL).  A fair and accurate copy of the summons and complaint filed against 947 S. is annexed as Exhibit "Q".

32.     On March 20, 2017, 947 S. interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "R".

33.     In its Answer, 947 S. admits in response to paragraphs "63" and "64":

> 63.     As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [947 S.] owed the Debtor the sum of $82,869.79 on account of goods sold by the Debtor and delivered to [947 S.].
> 64.     According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [947 S.] also owed the Debtor $14,300.00 on account of advances made to or for the benefit of [947 S.].

See Exhibits "Q" and "R".

34.     Following joinder of the issue, counsel for Plaintiff and 947 S. exchanged initial disclosures, and Plaintiff served 947 S. with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "S".

35.     On or about April 25, 2018, 947 S. served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "T".

36.     In its response, 947 S. admits, among other things, that:

a.     As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 947 S. owed the Debtor $82,869.79 on account of goods sold and delivered to 947 S.

b.     947 S. did not make any direct payments to the Debtor subsequent to December 26, 2014 to reduce the accounts receivable due the Debtor.

c.     947 S. did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

d.     At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 947 S.

e.     947 S. admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

f.     947 S. admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "T".

37.     According to 947 S.'s transactions by account ledger, 947 S. owed the Debtor advances totaling $13,572.89 as of March 4, 2014. A fair and accurate copy of the transactions by account ledger produced by 947 S. is annexed as Exhibit "U".

38.     The foregoing records evidence that 947 S. has acknowledged owing the aggregate sum of $97,169.79 to the Debtor and that said sum has not been repaid to the estate.

## 1168 LIBERTY CORP.

39.     On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against 1168 Liberty Corp. ("1168 Liberty") to collect: (a) $129,773.48 in accounts receivable owed by 1168 Liberty to the Debtor; and (b) $41,500.00 in advances made by the Debtor to or for the benefit of 1168 Liberty, under adv pro no. 16-01154 (SHL).  A fair and accurate copy of the summons and complaint filed against 1168 Liberty is annexed as Exhibit "V".

40.     On March 20, 2017, 1168 Liberty interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "W".

41.     In its Answer, 1168 Liberty admits in response to paragraphs "63" and "64":

> 63.     As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [1168 Liberty] owed the Debtor the sum of $129,773.48 on account of goods sold by the Debtor and delivered to [1168 Liberty].
> 64.     According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [1168 Liberty] also owed the Debtor $41,500.00 on account of advances made to or for the benefit of [1168 Liberty].

See Exhibits "V" and "W".

42.     Following joinder of the issue, counsel for Plaintiff and 1168 Liberty exchanged initial disclosures, and Plaintiff served 1168 Liberty with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "X".

43.     On or about April 25, 2018, 1168 Liberty served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "Y".

44.     In its response, 1168 Liberty admits, among other things, that:

> a.     As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 1168 Liberty owed the Debtor $129,773.48 on account of goods sold and delivered to 1168 Liberty.

b. As of June 30, 2014, 1168 Liberty owed the Debtor "due from" obligations of $41,500.00.

c. 1168 Liberty did not make any direct payments to the Debtor subsequent to December 26, 2014 to reduce the accounts receivable due the Debtor.

d. 1168 Liberty did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

e. At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 1168 Liberty.

f. 1168 Liberty admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

g. 1168 Liberty admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "Y".

45. The foregoing records evidence that 1168 Liberty has acknowledged owing the aggregate sum of $171,273.48 to the Debtor and that said sum has not been repaid to the estate.

### 1556 FLATBUSH AVE CORP.

46. On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against 1556 Flatbush Ave Corp. ("1556 Flatbush") to collect: (a) $86,337.90 in accounts receivable owed by 1556 Flatbush to the Debtor; and (b) $16,365.72 in advances made by the Debtor to or for the benefit of 1556 Flatbush, under adv pro no. 16-01155 (SHL). A fair and accurate copy of the summons and complaint filed against 1556 Flatbush is annexed as Exhibit "Z".

47.     On March 20, 2017, 1556 Flatbush interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "AA".

48.     In its Answer, 1556 Flatbush admits in response to paragraphs "63" and "64":

> 63.     As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [1556 Flatbush] owed the Debtor the sum of $86,337.90 on account of goods sold by the Debtor and delivered to [1556 Flatbush].
> 64.     According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [1556 Flatbush] also owed the Debtor $16,365.72 on account of advances made to or for the benefit of [1556 Flatbush].

See Exhibits "Z" and "AA".

49.     Following joinder of the issue, counsel for Plaintiff and 1556 Flatbush exchanged initial disclosures, and Plaintiff served 1556 Flatbush with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "BB".

50.     On or about April 25, 2018, 1556 Flatbush served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "CC".

51.     In its response, 1556 Flatbush admits, among other things, that:

a.     As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 1556 Flatbush owed the Debtor $86,337.90 on account of goods sold and delivered to 1556 Flatbush.

b.     As of June 30, 2014, 1556 Flatbush owed the Debtor "due from" obligations of $16,365.72.

c.     1556 Flatbush did not make any direct payments to the Debtor subsequent to December 26, 2014 to reduce the accounts receivable due the Debtor.

     d.     1556 Flatbush did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

     e.     At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 1556 Flatbush.

     f.     1556 Flatbush admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

     g.     1556 Flatbush admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "CC".

52.     According to the accounts payable aging ledger produced by 1556 Flatbush, as of December 23, 2014, 1556 Flatbush owed the Debtor accounts payable of $86,321.90.  A fair and accurate copy of the accounts payable aging ledger produced by 1556 Flatbush is annexed as Exhibit "DD".

53.     The foregoing records evidence that 1556 Flatbush has acknowledged owing the aggregate sum of $179,676.41 to the Debtor and that said sum has not been repaid to the estate.

## 2891 3RD AVE CORP.

54.     On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against 2891 3rd Ave Corp. ("2891 3rd") to collect: (a) $128,407.99 in accounts receivable owed by 2891 3rd to the Debtor; and (b) $105,455.00 in advances made by the Debtor to or for the benefit of 2891 3rd,  under adv pro no. 16-01156 (SHL).  A fair and accurate copy of the summons and complaint filed against 2891 3rd is annexed as Exhibit "EE".

55.     On March 20, 2017, 2891 3rd interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "FF".

56.     In its Answer, 2891 3rd admits in response to paragraphs "63" and "64":

> 63.     As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [2891 3rd] owed the Debtor the sum of $128,407.99 on account of goods sold by the Debtor and delivered to [2891 3rd].
> 64.     According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [2891 3rd] also owed the Debtor $105,455.00 on account of advances made to or for the benefit of [2891 3rd]. r

<u>See</u> Exhibits "EE" and "FF".

57.     Following joinder of the issue, counsel for Plaintiff and 2891 3rd exchanged initial disclosures, and Plaintiff served 2891 3rd with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "GG".

58.     On or about April 25, 2018, 2891 3rd served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "HH".

59.     In its response, 2891 3rd admits, among other things, that:

a.     As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 2891 3rd owed the Debtor $128,407.99 on account of goods sold and delivered to 2891 3rd.

b.     As of June 30, 2014, 2891 3rd owed the Debtor "due from" obligations of $105,455.00.

c.     2891 3rd did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

d.     At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 2891 3rd.

  e.  2891 3rd admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

  f.  2891 3rd admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

<u>See</u> Exhibit "HH".

  60.  According to the accounts payable aging ledger produced by 2891 3rd, as of December 23, 2014, after making a post-petition general journal debit of $36,333.17 on July 31, 2014, 2891 3rd owed the Debtor $92,058.82. A fair and accurate copy of the accounts payable aging ledger produced by 2891 3rd is annexed as Exhibit "II".

  61.  Disregarding 2891 3rd's post-petition $36,333.17 general journal entry on July 31, 2014, according to its own ledger, 2891 3rd owed the Debtor accounts payable of $128,391.99 as of December 23, 2014. <u>See</u> Exhibit "II".

  62.  The foregoing records evidence that 2891 3rd has acknowledged owing the aggregate sum of $233,862.99 to the Debtor and that said sum has not been repaid to the estate.

### PG OF 730 FLATBUSH AVE CORP.

  63.  On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against PG of 730 Flatbush Ave Corp. ("730 Flatbush") to collect: (a) $122,036.97 in accounts receivable owed by 730 Flatbush to the Debtor; and (b) $6,855.67 in advances made by the Debtor to or for the benefit of 730 Flatbush, under adv pro no. 16-01157 (SHL). A fair and accurate copy of the summons and complaint filed against 730 Flatbush is annexed as Exhibit "JJ".

  64.  On March 20, 2017, 730 Flatbush interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "KK".

65. In its Answer, 730 Flatbush admits in response to paragraphs "63" and "64":

      63. As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [730 Flatbush] owed the Debtor the sum of $122,036.97 on account of goods sold by the Debtor and delivered to [730 Flatbush].

      64. According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [730 Flatbush] also owed the Debtor $6,855.67 on account of advances made to or for the benefit of [730 Flatbush].

<u>See</u> Exhibits "JJ" and "KK".

66. Following joinder of the issue, counsel for Plaintiff and 730 Flatbush exchanged initial disclosures, and Plaintiff served 730 Flatbush with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "LL".

67. On or about April 25, 2018, 730 Flatbush served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "MM".

68. In its response, 730 Flatbush admits, among other things, that:

    a. As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, 730 Flatbush owed the Debtor $122,036.97 on account of goods sold and delivered to 730 Flatbush.

    b. As of June 30, 2014, 730 Flatbush owed the Debtor "due from" obligations of $6,855.67.

    c. 730 Flatbush did not make any direct payments to the Debtor subsequent to December 26, 2014 to reduce the accounts receivable due the Debtor.

    d. 730 Flatbush did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

e.	At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and 730 Flatbush.

f.	730 Flatbush admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

g.	730 Flatbush admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "MM".

69.	According to the accounts payable aging ledger produced by 730 Flatbush, as of December 23, 2014, after making a post-petition general journal debit of $62,153.04 on July 31, 2014, 730 Flatbush owed the Debtor $59,867.93.  A fair and accurate copy of accounts payable aging ledger produced by 730 Flatbush is annexed as Exhibit "NN".

70.	Disregarding 730 Flatbush's post-petition $62,153.04 general journal entry on July 31, 2014, according to its own ledger, 730 Flatbush owed the Debtor accounts payable of $122,020.97 as of December 23, 2014.  See Exhibit "NN".

71.	The foregoing records evidence that 730 Flatbush has acknowledged owing the aggregate sum of $179,676.41 to the Debtor and that said sum has not been repaid to the estate.

## PG OF JERSEY CITY CORP.

72.	On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against PG of Jersey City Corp. ("Jersey City") to collect: (a) $48,343.93 in accounts receivable owed by Jersey City to the Debtor; and (b) $25,600.00 in advances made by the Debtor to or for the benefit of Jersey City, under adv pro no. 16-01158 (SHL).  A fair and accurate copy of the summons and complaint filed against Jersey City is annexed as Exhibit "OO".

73.    On March 20, 2017, Jersey City interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "PP".

74.    In its Answer, Jersey City admits in response to paragraphs "63" and "64":

> 63.    As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [Jersey City] owed the Debtor the sum of $48,343.93 on account of goods sold by the Debtor and delivered to [Jersey City].
> 64.    According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [Jersey City] also owed the Debtor $25,600.00 on account of advances made to or for the benefit of [Jersey City].

See Exhibits "OO" and "PP".

75.    Following joinder of the issue, counsel for Plaintiff and Jersey City exchanged initial disclosures, and Plaintiff served Jersey City with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "QQ".

76.    On or about April 25, 2018, Jersey City served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "RR".

77.    In its response, Jersey City admits, among other things, that:

a.    As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, Jersey City owed the Debtor $48,343.93 on account of goods sold and delivered to Jersey City.

b.    As of June 30, 2014, Jersey City owed the Debtor "due from" obligations of $25,600.00.

c.    Jersey City did not make any direct payments to the Debtor subsequent to December 26, 2014 to reduce the accounts receivable due the Debtor.

d.      Jersey City did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

e.      At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and Jersey City.

f.      Jersey City admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

g.      Jersey City admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "RR".

78.      According to the accounts payable aging ledger produced by Jersey City, as of December 23, 2014, after making a post-petition general journal debits of $122,319.05 on July 31, 2014 and $25,600.00 on August 1, 2014, and a credit of $1,213.40 on December 1, 2014, Jersey City reported a negative account payable balance.  A fair and accurate copy of the accounts payable aging ledger produced by 730 Flatbush is annexed as Exhibit "SS".

79.      Disregarding Jersey City's post-petition general journal entries, according to its own ledger, Jersey City owed the Debtor accounts payable of $49,611.33 as of December 23, 2014. See Exhibit "SS".

80.      The foregoing records evidence that Jersey City has acknowledged owing the aggregate sum of $179,676.41 to the Debtor and that said sum has not been repaid to the estate.

## PRETTY GIRL OF FORDHAM ROAD CORP.

81.      On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against Pretty Girl of Fordham Road Corp. ("Fordham Road") to collect: (a)

$337,661.13 in accounts receivable owed by Fordham Road to the Debtor; and (b) $125,400.00 in advances made by the Debtor to or for the benefit of Fordham Road, under adv pro no. 16-01159 (SHL). A fair and accurate copy of the summons and complaint filed against Fordham Road is annexed as Exhibit "TT".

82. On March 20, 2017, Fordham Road interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "UU".

83. In its Answer, Fordham Road admits in response to paragraphs "63" and "64":

63. As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [Fordham Road] owed the Debtor the sum of $337,661.13 on account of goods sold by the Debtor and delivered to [Fordham Road].
64. According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [Fordham Road] also owed the Debtor $125,400.00 on account of advances made to or for the benefit of [Fordham Road].

See Exhibits "TT" and "UU".

84. Following joinder of the issue, counsel for Plaintiff and Fordham Road exchanged initial disclosures, and Plaintiff served Fordham Road with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "VV".

85. On or about April 25, 2018, Fordham Road served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "WW".

86. In its response, Fordham Road admits, among other things, that:

a. As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, Fordham Road owed the Debtor $337,661.13 on account of goods sold and delivered to Fordham Road.

b. As of June 30, 2014, Fordham Road owed the Debtor "due from" obligations of $125,400.00.

c. Fordham Road did not make any direct payments to the Debtor subsequent to December 26, 2014 to reduce the accounts receivable due the Debtor.

d. Fordham Road did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

e. At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and Fordham Road.

f. Fordham Road admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

g. Fordham Road admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "WW".

87. The foregoing records evidence that Fordham Road has acknowledged owing the aggregate sum of $463,061.13 to the Debtor and that said sum has not been repaid to the estate.

## PRETTY GIRL OF MOUNT VERNON INC.

88. On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against Pretty Girl of Mount Vernon Inc. ("Mount Vernon") to collect: (a) $128,028.40 in accounts receivable owed by Mount Vernon to the Debtor; and (b) $41,364.43 in advances made by the Debtor to or for the benefit of Mount Vernon, under adv pro no. 16-01160 (SHL). A fair and accurate copy of the summons and complaint filed against Mount Vernon is annexed as Exhibit "XX".

89.     On March 20, 2017, Mount Vernon interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "YY".

90.     In its Answer, Mount Vernon admits in response to paragraphs "63" and "64":

> 63.     As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [Mount Vernon] owed the Debtor the sum of $128,028.40 on account of goods sold by the Debtor and delivered to [Mount Vernon].
>
> 64.     According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [Mount Vernon] also owed the Debtor $41,364.43 on account of advances made to or for the benefit of [Mount Vernon].

See Exhibits "XX" and "YY".

91.     Following joinder of the issue, counsel for Plaintiff and Mount Vernon exchanged initial disclosures, and Plaintiff served Mount Vernon with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "ZZ".

92.     On or about April 25, 2018, Mount Vernon served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "AAA".

93.     In its response, Mount Vernon admits, among other things, that:

a.     As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, Mount Vernon owed the Debtor $128,028.40 on account of goods sold and delivered to Mount Vernon.

b.     As of June 30, 2014, Mount Vernon owed the Debtor "due from" obligations of $41,364.43.

c.     Mount Vernon did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

d.   At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and Mount Vernon.

e.   Mount Vernon admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

f.   Mount Vernon admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

See Exhibit "AAA".

94.   According to the accounts payable aging ledger produced by Mount Vernon, as of December 23, 2014, Mount Vernon owed the Debtor accounts payable of $210,393.18.  A fair and accurate copy of the accounts payable ledger produced by Mount Vernon is annexed as Exhibit "BBB".

95.   The foregoing records evidence that Mount Vernon has acknowledged owing the aggregate sum of no less than $169,392.83 to the Debtor and that said sum has not been repaid to the estate.

## PRETTY GIRL OF NEWARK LTD.

96.   On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against Pretty Girl of Newark Ltd. ("Newark") to collect: (a) $225,607.24 in accounts receivable owed by Newark to the Debtor; and (b) $50,479.79 in advances made by the Debtor to or for the benefit of Newark, under adv pro no. 16-01161 (SHL).  A fair and accurate copy of the summons and complaint filed against Newark is annexed as Exhibit "CCC".

97.   On March 20, 2017, Newark interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "DDD".

98. In its Answer, Newark admits in response to paragraphs "63" and "64":

63. As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [Newark] owed the Debtor the sum of $225,607.24 on account of goods sold by the Debtor and delivered to [Newark].

64. According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [Newark] also owed the Debtor $50,479.79 on account of advances made to or for the benefit of [Newark].

<u>See</u> Exhibits "CCC" and "DDD".

99. Following joinder of the issue, counsel for Plaintiff and Newark exchanged initial disclosures, and Plaintiff served Newark with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "EEE".

100. On or about April 25, 2018, Newark served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "FFF".

101. In its response, Newark admits, among other things, that:

a. As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, Newark owed the Debtor $225,607.24 on account of goods sold and delivered to Newark.

b. As of June 30, 2014, Newark owed the Debtor "due from" obligations of $50,479.79.

c. Newark did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

d. At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and Newark.

e. Newark admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

    f.  Newark admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

<u>See</u> Exhibit "FFF".

102. According to the accounts payable aging ledger produced by Newark, as of December 23, 2014, Newark owed the Debtor accounts payable of $311,515.14. A fair and accurate copy of the accounts payable aging ledger produced by Newark is annexed as Exhibit "GGG".

103. The foregoing records evidence that Newark has acknowledged owing the aggregate sum of $276,087.03 to the Debtor and that said sum has not been repaid to the estate.

## PRETTY GIRL OF WOODBRIDGE INC.

104. On June 30, 2016, the Trustee commenced an adversary proceeding by filing a complaint against Pretty Girl of Woodbridge Inc. ("Woodbridge") to collect: (a) $151,012.30 in accounts receivable owed by Woodbridge to the Debtor; and (b) $73,500.00 in advances made by the Debtor to or for the benefit of Woodbridge, under adv pro no. 16-01162 (SHL). A fair and accurate copy of the summons and complaint filed against Woodbridge is annexed as Exhibit "HHH".

105. On March 20, 2017, Woodbridge interposed an answer with affirmative defenses, a copy of which is annexed as Exhibit "III".

106. In its Answer, Woodbridge admits in response to paragraphs "63" and "64":

  63. As stated on the Debtor's Chapter 11 monthly operating report, dated December 26, 2014, filed in this Court on January 13, 2015, [Woodbridge] owed the Debtor the sum of $151,012.30 on account of goods sold by the Debtor and delivered to [Woodbridge].

64. According to Exhibit "B" to Nigri's declaration in support of the Petition, as of June 30, 2014, [Woodbridge] also owed the Debtor $73,500.00 on account of advances made to or for the benefit of [Woodbridge].

<u>See</u> Exhibits "HHH" and "III".

107. Following joinder of the issue, counsel for Plaintiff and Woodbridge exchanged initial disclosures, and Plaintiff served Woodbridge with, among other things, a Request for Admissions, dated February 27, 2018, a fair and accurate copy of which is annexed as Exhibit "JJJ".

108. On or about April 25, 2018, Woodbridge served its objections and responses to Plaintiff's Request for Admissions, a fair and accurate copy of which is annexed as Exhibit "KKK".

109. In its response, Woodbridge admits, among other things, that:

a. As stated in the Debtor's monthly operating report dated December 26, 2014, as of December 23, 2014, Woodbridge owed the Debtor $151,012.30 on account of goods sold and delivered to Woodbridge.

b. As of June 30, 2014, Woodbridge owed the Debtor "due from" obligations of $73,500.00.

c. Woodbridge did not make any direct payments to the Debtor subsequent to June 30, 2014 on account of the advances made by the Debtor.

d. At all times relevant, Albert Nigri was the sole shareholder and an officer of the Debtor and Woodbridge.

e. Woodbridge admitted that it was jointly liable with the Debtor to JPMorgan Chase Bank, N.A.

f. Woodbridge admitted that it pledged its inventory as additional collateral to JPMorgan Chase Bank, N.A. and that its inventory was reported on the borrowing base certificates provided by the Debtor to JPMorgan Chase Bank, N.A.

<u>See</u> Exhibit "KKK".

110. According to the accounts payable aging ledger produced by Defendant, as of December 23, 2014, after making a post-petition general journal debit of $21,893.79 on July 31, 2014, and credit adjustments of $554.62 on November 30, 2014 and $2,070.43 on December 1, 2014, Woodbridge owed the Debtor accounts payable of $129,102.51. A fair and accurate copy of the accounts payable aging ledger produced by Woodbridge is annexed as Exhibit "LLL".

111. Disregarding Woodbridge's post-petition journal entries, according to its own ledger, Woodbridge owed the Debtor accounts payable $153,621.35 as of December 23, 2014. <u>See</u> Exhibit "LLL".

112. The foregoing records evidence that Woodbridge has acknowledged owing the aggregate sum of $224,512.30 to the Debtor and that said sum has not been repaid to the estate.

Dated: Wantagh, New York
July 30, 2020

**LaMonica Herbst & Maniscalco, LLP**
Attorneys for Salvatore LaMonica, Esq.,
solely as Chapter 7 Trustee

By: ***s/David A. Blansky***
David A. Blansky, Esq.
A Partner of the Firm
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500

*m:\documents\company\cases\pretty girl\accounts receivable actions\summary judgment\omnibus 7056 statement.docx*